UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ALBERT T. DAVIDSON,<br><br>                     Plaintiff,<br>   v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security Administration,<br><br>                     Defendant. | CASE NO. C09-5482BHS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for May 21, 2010 |

This matter has been referred to Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). This matter has been briefed, and after reviewing the record, the undersigned recommends remanding the matter to the administration for further consideration.

**FACTUAL AND PROCEDURAL HISTORY**

Plaintiff, Albert Davidson, was born in 1976. Tr. 502. Plaintiff started abusing alcohol at an early age and dropped out midway through his senior year of high school. Tr. 430, 486. Plaintiff worked as a new car detailer until he was arrested at his job on criminal charges brought

REPORT AND RECOMMENDATION - 1

by his estranged wife that he had broke into his old house.  Tr. 487, 505.  Plaintiff explained that he did not drink while on the job and was able to control his drinking so that it did not interfere with his ability to work.  Id.   Plaintiff further explained that after his arrest and a difficult divorce he has been unable to return to work due to his inability to mentally cope with job related stress.  Tr. 492.  Plaintiff also had worked as a newspaper deliveryman, but quit this job when his car broke down.  Tr. 504-05.  Plaintiff claims that he has suffered significant panic attacks since he stopped drinking in February 2003.  Tr. 502.

Plaintiff filed applications for disability insurance benefits (with a date last insured of December 31, 2003) and supplemental security insurance benefits in March, 2003.  Tr. 87-89, 92, 342-45.  He alleged disability since February 10, 2003 due to major depression, a panic disorder and substance abuse.  Tr. 104.  After the applications were denied initially, the matter was assigned to an administrative law judge ("ALJ").  Tr. 68.  An administrative hearing was conducted on May 26, 2005, and the ALJ issued his decision on June 20, 2005.  Tr. 352-64.

Plaintiff appealed the ALJ's decision, and on September 28, 2007, the Administration's Appeals Council remanded the matter to the ALJ for additional administrative proceedings to clarify the record.  Tr. 365, 364A-364C.  In accordance with the Appeals Council's remand, a second administrative hearing occurred on March 13, 2007.  Tr. 498-529.  On May 24, 2007, the ALJ issued a second decision finding plaintiff not disabled.  Tr. 42-55.  Specifically, the ALJ found plaintiff capable of returning to his past work as a car detailer and newspaper carrier.  Tr. 55.  The Appeals Council declined review on June 24, 2009, leaving the ALJ's most recent decision as the final administrative decision.

The matter is now before the court to review the ALJ's decision.  In his Opening Brief, plaintiff raises the following five claims:

  1.  Did the ALJ err by rejecting consistent opinions from treating and examining physicians?

REPORT AND RECOMMENDATION - 2

2. Did the ALJ err by rejecting statements and testimony from plaintiff's mother?

3. Did the ALJ err by rejecting plaintiff's testimony without "clear and convincing reasons?"

4. Did the ALJ err by formulating a RFC without following SSR 96-8p?

5. Did the ALJ present a thorough hypothetical to the VE and conduct a functional analysis of plaintiff's past work?

## DISCUSSION

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. Id.

Plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment that has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the

REPORT AND RECOMMENDATION - 3

Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

### 1. *The ALJ Improperly Rejected The Medical Opinion And Evaluations*

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss all evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (*citation omitted*). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also* Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

REPORT AND RECOMMENDATION - 4

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir.,2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

Here, plaintiff argues the ALJ failed to provide sufficient reasons for rejecting the opinions of Dr. Lucas and Dr. Savlov, a treating psychiatrist and treating psychologist, respectively. Plaintiff also argues the ALJ failed to properly evaluate the opinion of Dr. Neims, an examining psychologist. After reviewing the record, the undersigned finds the ALJ failed to provide specific and legitimate reasons to discredit or reject the medical opinion evidence.

### a) Dr. Lucas and Dr. Savlov; Treating Sources

Dr. Trescott, MD, a family practitioner at Group Health noted on March 7, 2003 that she was prescribing Trazadone for sleep and Ativan for panic symptoms. She sent plaintiff to Dr. Lucas for a psychiatric evaluation. Tr. 157. Dr. Lucas, MD, conducted a psychiatric evaluation on March 11, 2003 for a complaint of panic attacks occurring once or twice a day and lasting for 15-120 minutes. Dr. Lucas noted plaintiff was taking Buspar and Zoloft. Upon completion of his evaluation Dr. Lucas diagnosed a Major Depressive Disorder with Panic Attacks and a History of Alcohol Dependence. He assessed plaintiff with a GAF score of 40[1] and changed

plaintiff's medications. He prescribed Klonopin, a tricyclic with sedative properties and Imipramine at bedtime. Tr. 158-160.

Dr. Lucas referred plaintiff to Dr. Savlov, PhD for psychological assistance in coping with panic and anxiety using behavioral management on March 20, 2003. Dr. Savlov estimated plaintiff's current anxiety level at a 9 on a scale of 0 to 10. Dr. Savlov attempted to apply some breathing techniques during the evaluation and plaintiff began to have a panic attack. Dr. Savlov diagnosed: Panic with Agoraphobia; Alcohol Dependence in remission; Major Depression; Rule out Dependent Personality or Anti-Social Personality disorders. Dr. Savlov assessed a GAF score of 45-55. Dr. Savlov recommended continuation of Dr. Lucas' treatment and provided a holistic plan of education, relaxation, dietary restriction, daily schedule and exercise to reduce anxiety. Tr. 162-67.

Progress notes from Dr. Costa, Dr. Lucas, and Dr. Savlov, from February 28, 2003 through August 12, 2003 report plaintiff was continuing treatment of GAD, Panic Disorder with Agoraphobia and Alcohol Dependence. Tr. 187-198. Telephone consultations with Behavioral Health on February 28, March 6, March 15, March 22, report plaintiff was experiencing panic attacks and needed to see his providers immediately; plaintiff's Clonazepam and Imipramine dosages were adjusted upward until plaintiff could be seen. Tr. 192-196. Dr. Lucas evaluated plaintiff on March 24, 2003, noting plaintiff was very anxious, sleep was very poor and he was fearful. Dr. Lucas commented that he may have smelled alcohol on plaintiff's breath. Tr. 191. Dr. Savlov evaluated plaintiff on April 29, 2003 when plaintiff reported medications were not working and he was unable to leave the house to walk as he was too fearful. Tr. 190. On March 20, 2003, July 15, 2003 and again on August 12, 2003, Dr. Lucas authored letters stating plaintiff suffered from a panic disorder, was being medicated and was medically unable to work or search

REPORT AND RECOMMENDATION - 6

for work with an uncertain prognosis. Tr. 187, 235, 236. Progress notes from Dr. Lucas indicate that from June 2, 2003 to April 8, 2005 plaintiff continued to have symptoms of Agoraphobia with Panic Disorder and Bipolar Mixed NOS and was treated with Clonazepam, Depakote at 1250 milligrams a day, Lithium Carbonate and Risperdol. Tr. 324-36.

On April 18, 2005, Dr. Lucas completed a medical source statement for mental impairments. Tr. 237-245. He noted that he saw plaintiff about every 1-6 months from March, 2003 through March, 2005. He diagnosed: 1) Bipolar Disorder; 2) Panic Disorder with Agoraphobia; 3) Alcohol Dependence in remission. He also assessed a current GAF of 45. Tr. 237. Upon examination, Dr. Lucas noted plaintiff was dirty and disheveled with agitated speech and a depressed mood. Plaintiff was responding poorly to medications, other than a reduction in irritability. Tr. 238. Dr. Lucas assessed the following functional limitations:

- Marked restriction of Activities of Daily Living;
- Marked restriction in Maintaining Social Functioning;
- Marked difficulties in Maintaining Concentration, Persistence or Pace;
- Three Episodes of Decompensation of at least two weeks duration.

Tr. 239-40. Dr. Lucas' progress notes report he saw plaintiff in follow-up on July 14, 2005 and reported plaintiff was still having four panic attacks per week. Tr. 450.

*b) Dr. Neims; An Examining Source*

Dr. Neims, a DSHS consulting psychologist, performed an evaluation with objective testing on February 9, 2007, at the request of DSHS in conjunction with an application for disability. Dr. Neims also completed a medical source statement concerning the severity of mental impairments. Tr. 425-442. In addition to the patient history, review of records and mental status exam, Dr. Neims also administered the Personal Assessment Inventory -II, Wide Range Achievement Test-IV, Rey 15 Factor, Trail Making, Manifest Anxiety Questionnaire, Hamilton Psychiatric Rating Scale for Depression, Hamilton Psychiatric Rating Scale for

REPORT AND RECOMMENDATION - 7

Anxiety, Beck Depression Inventory 2nd Ed, Beck Anxiety Inventory, and the Miller Forensic Assessment of Symptoms. Tr. 427. The Mental Status Exam yielded difficulties with dysphoria, panic attacks, phobias, and suicidal ideation without plan. Tr. 432-33. There was no indication of malingering on the Rey test or PAI test. The WRAT indicated that spelling and reading were at the high school level, but arithmetic was at the 5th grade level. The Beck Depression and Hamilton Psychiatric results reported severe depressive symptoms placing plaintiff in the severe range of depression and the Beck Anxiety placed him in the Moderate to Marked range for anxiety. The MAQ placed him in the marked range of anxious arousal. Tr. 434. Dr. Neims described plaintiff as: likely to be socially isolated; may have limited social skills with difficulty interpreting normal nuances of interpersonal relationships; his thought processes are likely to be marked by confusion, distractibility and difficulty in concentration; he may think his thoughts are somehow being blocked or disrupted; and work relationships with others are likely to be very strained, despite any efforts by others to demonstrate support and assistance. Tr. 435. Dr. Neims diagnosed: 1) Major Depressive Episode, without psychotic features; 2) Panic Attack with Agoraphobia; 3) Alcohol Dependence in reported remission; and 4) Personality Disorder NOS. Dr. Neims assessed a Current GAF and past year GAF of 50. Tr. 436. Dr. Neims concluded that plaintiff's prognosis was "very guarded" relative to patterns of avoidance, anxiety, and fearfulness. Tr. 437. Dr. Neims completed a source statement that assessed:

- Markedly limited ability to maintain concentration for extended periods;
- Markedly limited ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
- Markedly limited in ability to work in coordination with or proximity to others without being unduly distracted by them;
- Markedly limited in ability to accept instructions and to respond appropriately to criticism from supervisors;
- Markedly limited in ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;

REPORT AND RECOMMENDATION - 8

- Markedly limited ability to travel in unfamiliar places or to use public transportation;
- Moderately to Markedly limited in the ability to get along with coworkers were peers without distracting them or exhibiting behavioral extremes;
- Moderately to Markedly limited in ability to ask simple questions or request assistance;
- Moderately limited in ability to sustain an ordinary routine without special supervision;
- Moderately limited in the ability to make simple work-related decisions;
- Moderately limited ability to respond appropriately to changes in the work setting;
- Moderately limited ability to be aware of normal hazards and take appropriate precautions.

Tr. 423-426.

The ALJ accurately summarized these opinions, along with other medical evidence in the record, Tr. 48-50, but did not provide specific and legitimate reasons for discounting the treating and examining opinions. For instance, the ALJ assigned "little weight" to the opinions of the treating sources, Dr. Lucas and Dr. Savlov. Tr. 54. The ALJ stated this was warranted due, in part, to their reliance on plaintiff's subjective reports and lack of consideration for plaintiff's abuse of alcohol. *Id*. Most troubling is the ALJ's statement that the opinions were being discounted due to "the possibility" that "they may express an opinion in an effort to assist a patient with whom they sympathize for one reason or another." *Id*. In addition, the ALJ stated he was discounting Dr. Lucas' April opinion letter because it was produced on a request from plaintiff's legal counsel. *Id*. With respect to the examining opinion of Dr. Neims, the ALJ stated he "cannot give much weight to this opinion" because Dr. Neims is not a treating physician and the report was based on plaintiff's subjective reports. *Id*.

As stated above, the ALJ is generally required to give more deference treating physicians and examining physicians opinions than non-examining physicians. Thus, the undersigned is unable to understand the ALJ's discrediting of the above opinions when the ALJ does not rely on other treating source or examining source opinions to support his decision. Instead, the ALJ in

REPORT AND RECOMMENDATION - 9

this matter has relied on the state agency, non-examining physicians, opinions to support his finding that plaintiff retains the ability to return to his past relevant work. *Id*.

Moreover, the reasons provided by the ALJ to discredit the opinions are not legitimate. For example, the ALJ discredited the opinions because they were supposedly based on plaintiff's subjective reports. All mental health assessments are based in large part on a doctors interview with his or her patient. However, the doctors training and experience in conducting these interviews and interpreting the answers provided is not acknowledged by the ALJ's reasoning. In addition, and more importantly, the ALJ failed to acknowledged that the doctor's assessments were not based solely on plaintiff's subjective reports, but were also based on mental health testing, particularly the assessment of Dr. Neims, as noted above.

Finally, the ALJ impermissibly rejected the opinions based on the "possibility" that the treating sources were being sympathetic toward plaintiff's condition and on the fact that one of the opinion letters was produced on request of plaintiff's legal counsel. The ALJ points to no evidence showing any prejudice held by the physicians. Unless actual evidence of impropriety shows otherwise, the purpose for which a medical report is obtained does not provide a legitimate basis for rejecting them. Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1995).

In sum, this court finds the ALJ improperly evaluated the opinions of Dr. Lucas, Dr. Savlov, and Dr. Neims. In light of this finding, this court also finds the ALJ erred in his evaluation of plaintiff's the credibility, the lay witness evidence, plaintiff's residual functional capacity, and reliance on the vocational expert testimony, as each of these findings are affected by the ALJ's erroneous evaluation of the medical evidence. On remand the medical evidence should be reviewed in its entirety and the administration should reconsider steps-two through five of the administrative process.

## CONCLUSION

Based on the foregoing discussion, the Court should remand the matter to the administration for further consideration consistent with this report and recommendation. Also, if plaintiff subsequently seeks an award of costs and fees as a prevailing party, the Court should review the file and consider directing plaintiff to pay the filing fee which was earlier waived in accordance with Local Civil Rule Cr 3(b).

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections thereto. *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on May 21, 2010, as noted in the caption.

Dated this 29th day of April, 2010.

／s／ J. Richard Creatura

J. Richard Creatura
United States Magistrate Judge

REPORT AND RECOMMENDATION - 11